[No. 4111. Decided July 17, 1902.]

J. F. ADAMS, *Appellant*, v. CHRISTOPHER C. DEMPSEY *et al., Respondents.*

FRAUDULENT CONVEYANCES — INSTRUCTIONS.

In an action by a mortgagee of a stock of goods to recover their value from the sheriff who had sold them under an attachment levy, where the evidence merely showed that after the mortgagee took possession of the stock he handed three dollars from the proceeds of the sale of goods to the mortgagor, who was his brother, telling him to keep it, and that the mortgagee

had allowed the mortgagor to give fifteen dollars worth of goods to their mother, an instruction that if the jury should find that, after the mortgagee took possession of the stock, any considerable part thereof was retained by or delivered to the mortgagor by and with the consent of the mortgagee, with intent to hinder, delay or defeat the creditors of the mortgagor, or if the mortgagee allowed the mortgagor to sell any of said goods, and retain the money so received from such sale, for his own use, with like fraudulent intent to hinder, delay or defraud his creditors, with the knowledge of the mortgagee, then such mortgage was void, was erroneous, if the instruction meant that the jury must infer fraud from the disposition of the three dollars and the groceries, or if it meant that the mortgage was constructively fraudulent, as a matter of law.

Appeal from Superior Court, Spokane County.—Hon. Leander H. Prather, Judge. Reversed.

*W. J. Thayer,* for appellant.

*Danson & Huneke,* for respondents.

The opinion of the court was delivered by

Reavis, C. J.—Plaintiff, J. F. Adams, held a chattel mortgage upon a stock of goods and merchandise in Spokane. His brother, Harry Adams, was the mortgagor, and conducted the mercantile business in Spokane. The plaintiff resided in Seattle. The mortgage was given to secure an antecedent debt, and, at the time of its execution, the mortgagor was heavily indebted to other creditors, who were pressing for payment of their claims. The mortgage was executed and recorded, and plaintiff immediately took possession of the property. On the same day that plaintiff took possession, the defendant Dempsey, as sheriff, levied a writ of attachment upon the goods at the suit of another creditor, and thereafter the goods were sold under execution, and the proceeds used as payment upon the judgment, upon which the attachment was issued. This action is to recover the value

of the goods from the sheriff and the sureties on his official bond.

This is the second appeal of the case. The former is reported in 22 Wash. 284 (60 Pac. 649, 79 Am. St. Rep. 933). The case was there reversed for error in one of the instructions, which is as follows:

"The jury are further instructed that if you find from the evidence that any considerable part of the proceeds of such property, after the execution of said mortgage and the taking possession of the property thereunder, were retained by said Harry C. Adams by and with the consent of the plaintiff, or that if, having received any considerable part of the proceeds, said plaintiff turned the same over to said Harry C. Adams for his own benefit, then I instruct you that said mortgage was fraudulent and void, and in that case your verdict should be for the defendants."

The rule in *Ephraim v. Kelleher,* 4 Wash. 243 (29 Pac. 985, 18 L. R. A. 604), was there announced as controlling:

"The tendency of the later decisions appears to be against declaring these instruments fraudulent in law, unless they are necessarily so upon their face, and towards leaving the question of fraud open to investigation as matter of fact; and this would seem to be not only consonant with reason, but in accord with sound policy."

It was observed of the application of the instruction:

"The only evidence applicable to the second proposition involved in the instruction was that the mortgagee, having collected the sum of three dollars—being proceeds of the sale of a portion of the mortgaged goods—thereupon turned the same over to the mortgagor, telling him to take it, as he 'might need it.' The testimony concerning this transaction was clear and undisputed, and the effect of this latter instruction was to tell the jury that the plaintiff could not recover. The instruction should not have been given."

Upon the present review, substantially, the same error appears. There is in substance the same evidence here relating to the disposition of $3, the proceeds of the sale of the goods after the plaintiff had taken possession of them under the mortgage, and there is also evidence now tending to show that the mortgagor, Harry Adams, had been allowed to give $15 worth of groceries to the mother of himself and plaintiff, after the mortgage was executed. The court, upon the request of defendants, gave two instructions as follows:

"You are further instructed that if you find, by preponderance of evidence, that after said J. F. Adams had taken possession of the property described in said mortgage, that any considerable part of said property was retained by or delivered to said Harry C. Adams by and with the consent of said plaintiff, with the fraudulent intent, on the part of said Harry C. Adams, to hinder, delay, or defeat his creditors, and that said J. F. Adams had knowledge of said fraudulent intent, if you find such exists, and participated therein, then said mortgage is fraudulent and void, and in that case your verdict should be for the defendants.

"You are further instructed that if you find, from the preponderance of the evidence, that, after taking possession of said property described in said mortgage, said plaintiff allowed said Harry C. Adams to sell any of said goods, and retain the money so received from such sale, for his own use, with the fraudulent intent to hinder, delay, or defraud his creditors, and that said plaintiff knew of such fraudulent intent, and participated therein, then you are instructed that said mortgage was and is void, and in case you so find your verdict should be for the defendants."

The court at its own instance gave, also, the following general instruction:

2.  "The only issue which the court will submit to you for your determination is the question whether or not

the chattel mortgage in question was given and taken in good faith between H. C. Adams and J. F. Adams, or was it for the purpose, between them, of hindering, delaying, or defrauding the creditors of the said H. C. Adams as alleged in defendants' answers."

If the first two instructions above mentioned be construed to mean that the jury must infer fraud from the giving of the groceries or the disposition of the $3, they are a comment on the evidence, and invade the province of the jury. If they mean that the mortgage is constructively fraudulent, as a matter of law, if these facts are found by the jury, the instructions are plainly erroneous. They are also inconsistent with instruction No. 2, quoted, which correctly states the law. The evidence referred to, relating to the disposition of the groceries and money after the execution of the mortgage, is pertinent upon the issue of good faith, and must be taken into consideration by the jury, in connection with other testimony in the case, in determining good faith.

For error in giving the two instructions mentioned, the case is reversed and remanded for a new trial.

FULLERTON, HADLEY, ANDERS, MOUNT and DUNBAR, JJ., concur.