[No. 13250.  Department Two.  April 11, 1916.]

OWEN JOHNSON *et al., Appellants*, v. JOHANNA MARIANA
BLOMDAHL, *Respondent*.[1]

FRAUDULENT CONVEYANCES—WANT OF CONSIDERATION—EVIDENCE—
SUFFICIENCY.  A conveyance of all the debtor's real property to his
sister, upon threat of an action against him for breach of promise,
is shown to be fraudulent as to creditors, where it appears that the
only consideration was his alleged oral promise to pay his sister
$15 a month towards the support of their niece, legally adopted
by her upon the death of another sister, that the debtor was a
bachelor, making his home with his sister for twenty years except
when away at work, and during the thirteen years after the adop-
tion, he had paid his sister no more than fair compensation for his
board and lodging, although well able to make payments upon the
alleged agreement, upon which payments had never been made;
especially where he continued to exercise acts of ownership over
the property after the conveyance.

BREACH OF MARRIAGE PROMISE—ACTIONS—ACCRUAL.  A promise to
marry at a future time is breached immediately upon defendant's
informing the plaintiff that he would never marry her.

FRAUDULENT CONVEYANCES—"CREDITORS"—WHO ARE.  One having
a right of action for breach of marriage promise is a "creditor"
from the time the right of action accrues, within the law relating to
conveyances in fraud of creditors.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered July 10, 1915, in favor of the
defendant, dismissing an action to quiet title, after a trial
to the court.  Affirmed.

*Ellis De Bruler* and *W. P. Bell*, for appellants.

*Saunders & Nelson*, for respondent.

PARKER, J.—The plaintiffs, Johnson and wife, seek a de-
cree quieting title in them to a tract of land in Snohomish
county, as against the claim made thereto by the defendant,
Johanna Blomdahl, under an execution sale at which she be-
came the purchaser of the land in partial satisfaction of a

[1]Reported in 156 Pac. 561.

judgment rendered in her favor against Frank August Gustafson. Trial in the superior court resulted in a decree in her favor, from which the plaintiffs have appealed to this court. The main question here presented is as to whether appellants acquired their conveyance of the land from Frank August Gustafson in fraud of respondent's rights as a creditor of Gustafson.

The facts, as disclosed by the record before us, we think, may be fairly stated as follows: Sometime in the early part of the year 1913, respondent and Gustafson became engaged to be married, it being agreed between them that their marriage should occur about December of that year. Following their engagement, they indulged in sexual intercourse, resulting in respondent becoming pregnant sometime in the spring of 1913. This condition of respondent becoming apparent to her, she insisted upon an immediate marriage to Gustafson, which he refused to consummate. About August 1, 1913, after several entreaties on her part to have their marriage take place without further delay, he gave her to understand that he would not marry her at all, and in that sense broke his promise, though the time for the marriage as originally agreed upon had not arrived. She then threatened to sue him for breach of promise. Soon thereafter, on August 11, 1913, he conveyed to appellants the land here in controversy, that being all the property he possessed subject to execution. Thereafter respondent sued Gustafson in the superior court for King county for the recovery of damages resulting to her from his breach of promise of marriage, in which action judgment was rendered in her favor against him for the sum of $5,000 on December 8, 1914. Soon thereafter, a transcript of that judgment was duly filed in the office of the clerk of the superior court for Snohomish county. Execution issued thereon and the land here involved was sold thereunder as the land of Gustafson, respondent becoming the purchaser thereof in partial satisfaction of that judgment.

Appellants claim to be the purchasers of the land from Gustafson for value and in good faith before the rendering of the judgment against Gustafson under which respondent purchased the land, and that, therefore, she acquired no interest therein by virtue of her purchase under the execution sale. The consideration for the purchase of the land from Gustafson by appellants is claimed by them to be a debt owing by him to them for the maintenance of a child of a deceased sister of Gustafson and appellant Anna Johnson, adopted by appellants in the year 1895; and also for his board and lodging while living with them.

Gustafson is a bachelor, approaching fifty years of age. He has, for twenty years or more, made his home, in so far as he has had a home, with appellants. Appellant, Anna Johnson, is his sister, and the only relative he has living in this country, save the adopted child, his neice. He has been away to Alaska and other places at work a large portion of the time, but has always regarded his home as being with appellants. In 1895, a sister of Gustafson and appellant Anna Johnson died in California, leaving a daughter, then about one year old. This child was soon thereafter legally adopted by appellants and has ever since been reared and cared for by them as their own child.

It is claimed by appellants and Gustafson, and they so testified, that, at the time of the adoption of this child, it was agreed that, if they adopted and cared for the child, Gustafson would pay to them the sum of $15 per month towards her support. No writing of any kind was ever made evidencing such an agreement, nor was any memorandum in writing ever made evidencing any payments thereof. The alleged agreement and payments thereon as to Gustafson's board and lodging is not evidenced with any greater degree of certainty, so far as any express contract therefor is concerned. According to the testimony of appellants and Gustafson, in the year 1908, thirteen years after the adoption of the child, Gustafson gave to his sister $1,000, and in the year 1910 he

gave to her $250 additional.  It is not claimed that any other
payments were ever made from Gustafson to appellants or
either of them.  The total of these payments would not ma-
terially exceed a fair compensation for Gustafson's board
and lodging, considering the time he spent at the home of
appellants and interest for delay in payment therefor.  Gust-
afson was well able to make payments on the alleged agree-
ment to support the child long before the payment of the
$1,000.

The evidence, as a whole, seems to warrant the conclusion
that it was the intention of Gustafson that his sister should
have his property in case of his death.  The evidence also, we
think, leads to the conclusion that the obligations which Gust-
afson was under as to the Johnsons were such as are prompt-
ed by family relations rather than resting upon any legally
enforcible contract relation.  The evidence is not very clear
in showing that appellants had knowledge of the threatened
breach of promise suit by the respondent against Gustafson
at the time he conveyed the land to them.  We have noticed
that this land was all of the property of any consequence
owned by Gustafson at the time he conveyed it to appellants.
It is also shown that appellants then knew that it was sub-
stantially all the property possessed by him.  The land is
unoccupied in that it can hardly be said to be in the actual
physical possession of any one.  It is also largely unimproved,
though Gustafson has improved it to some extent by ditching
and clearing.  In this connection, it is worthy of note that
some of this improvement appears to have been made by
Gustafson after he conveyed the land to appellants, thus
pointing to his continued interest in the land.

The learned trial court decided the case in respondent's
favor upon the theory that the conveyance from Gustafson to
appellants was wholly without consideration; that they be-
came mere volunteers and were not entitled to hold the land
as against the lien of the judgment rendered in respondent's
favor against Gustafson, though that judgment was render-

ed a considerable time after the conveyance by Gustafson. The trial court also proceeded upon the theory that the obligation or debt upon which the judgment was rendered accrued to respondent prior to the conveyance by Gustafson to appellants. We are constrained to agree with the conclusion reached by the trial court, in view of all the circumstances shown, and especially in view of these salient facts: The conveyance was in effect from Gustafson to his sister, between whom there was a particularly close relationship. The land so conveyed was all of his property subject to execution, which fact was then known to appellants. Gustafson, in some measure at least, continued to exercise acts of possession evidencing his interest in the land after his conveyance thereof to appellants. The alleged agreement for the support of the minor child of the deceased sister was not claimed to have been made other than orally and remained without any recognition by payments thereon for thirteen years. The evidence points quite convincingly to Gustafson's ability to make the agreed payments thereon had there been any such agreement and had he considered himself under obligation to do so. The conclusion is warranted that there was no agreement that became binding in law upon Gustafson to make payments toward the support of the deceased sister's child, and that whatever legal obligation rested upon Gustafson for his board and lodging was satisfied by the payments we have noticed. Whatever obligation Gustafson may have considered resting upon him to contribute toward the support of the deceased sister's child, we think was prompted by family ties and was not such as could be enforced in law. We agree with the trial court in the view that the conveyance made by Gustafson to appellants was wholly without legal consideration, and was in fraud of the rights of respondent. The following decisions of this court lend support to our conclusion here reached: *Keith v. Kreidel*, 4 Wash. 544, 30 Pac. 638, 31 Pac. 333; *Bates v. Drake*, 28 Wash. 447, 68 Pac. 961; *Adams v. Dempsey*, 35 Wash. 80, 76 Pac. 538; *Canedy v. Skinner*, 50 Wash. 501,

97 Pac. 497; *Kalinowski v. McNeny,* 68 Wash. 681, 123 Pac. 1074.

Some contention is made in appellants' behalf that whatever right of action respondent had against Gustafson for breach of promise had not accrued at the time of the conveyance of the land by Gustafson to appellants on August 11, 1913. This seems to be rested upon the theory that it is so because the time for fulfilling the agreement for marriage would not arrive until the December following. This contention, we think, finds its answer in the fact that Gustafson not only had fully made up his mind to breach his promise of marriage prior to the making of the conveyance of his land to appellants, but he then informed respondent that he never would marry her. Under such circumstances, we think her right of action accrued immediately. This court has held that the term "creditor" not only includes the holder of a certain and fixed present debt, but every one having a right to damages capable of judicial enforcement, whether growing out of tort or contract. Plainly, under the facts of this case, respondent was a creditor of Gustafson prior to the time he conveyed this land to his sister and brother-in-law without consideration. *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961; *Sallaske v. Fletcher,* 73 Wash. 593, 132 Pac. 648, Ann Cas. 1914 D. 760, 47 L. R. A. (N. S.) 320; *Allen v. Kane,* 79 Wash. 248, 140 Pac. 534.

We conclude that the judgment must be affirmed. It is so ordered.

MORRIS, C. J., HOLCOMB, and MAIN, JJ., concur.